GREENING v. STEELE, *Plaintiff in Error.*

Division One, May 28, 1894.

1. **Principal and Agent**: IMPLIED AUTHORITY. An agent has no implied authority to change or modify or rescind the contract made by his principal; much less can he do so after the special agency has ended.

2. **Contract for Sale of Land**: AGENT'S AUTHORITY. A contract of an agent for the sale of land is not binding on the principal unless the authority to make it is conferred in writing. (R. S. 1889, sec. 5186.)

3. **Written Contract**: PAROL EVIDENCE. A parol contemporaneous agreement independent of, and not inconsistent with, the one reduced to writing is admissible in evidence.

4. ———: ———. So where a part only of a contract is put in writing, the omitted part may be established by parol.

5. **Deed**: ESCROW.   A deed may be placed *in escrow* to be held until the terms of its delivery are complied with, and if delivered contrary to the conditions of its deposit, such delivery is invalid.

6. ——: ——: EVIDENCE.   The condition of the delivery of the deed can not be established by an unauthorized writing made by an agent after the matter of his agency is concluded, nor by his subsequent admissions.

*Error to Daviess Circuit Court.*—HON. C. H. S. GOOD-MAN, Judge.

REVERSED AND REMANDED.

*J. F. Harwood, W. D. Hamilton* and *W. W. Arnold*, for plaintiff in error.

(1)   The contract signed by both Steele and Greening is full and complete, and no additional stipulations could be engrafted upon it without Steele's consent. *Pearson v. Carson*, 69 Mo. 550; *Robinson v. Jarvis*, 25 Mo. App. 451.   (2)   Where a contract is plain and complete in itself, and is not procured by fraud or deceit, the person making it can not be heard to say that he did not enter into such contract, but a different one. *Hais v. Wamsley*, 32 Mo. App. 115.   (3)   The written contract set forth in the defendant's answer, not being denied under oath by plaintiff, is confessed to be the true contract, and must be enforced according to its terms.   R. S., sec. 2186; *Robinson v. Jarvis*, 25 Mo. App. 421; *Rothschild v. Frensdorf*, 21 Mo. App. 318.   (4)   The conditions of the *escrow* were performed according to the memorandum.   After the first delivery of a deed in escrow it can only be revoked by the grantor for default in the performance of the condition.   Tiedeman on Real Property, page 651, sec. 815.

*Hicklin & Yates* for defendant in error.

(1)  The first error complained of by plaintiff in error is surely without foundation.   Even if this were an action to restrain Steele from selling the land, the petition would be good, as Greening is not compelled to stand by and see his land sold and then sue for damages, though Steele might be amply able to respond.   In such a case Greening would have no adequate remedy at law and his petition here would show it.   But this is not an action to restrain.   So we deem a recitation of authorities as wholly unnecessary to show that it is the plaintiff in error that has erred and not the court below. (2)  The next position assumed is likewise not well taken, for it is not sought to bind Steele by the writing that it is alleged that McCammon signed, but it is relied on as testimony tending to show that Greening's deed was to remain in escrow till he could go to Kansas and see Steele's land; for aught that appears on the face of the contract signed thirty-first day of January, 1889, he had such right.   (3)  The third and last error complained of is as to the lower court's finding of the facts and involves a review of the evidence.

MACFARLANE, J.—This is a suit in equity the purpose of which is to cancel a certain deed made by plaintiff to defendant to eighty acres of land in Daviess county.   The petition charges, in substance, that, after negotiations for an exchange of the eighty acres of land owned by plaintiff, for two hundred and forty acres of land owned by defendant, situate in the state of Kansas, an agreement was reached by which the exchange could be effected, provided the Kansas land answered the description, in quality and improvements thereon, as represented by defendant, and to determine which plaintiff was to examine the land himself; that,

pursuant to this agreement, deeds were made and placed in the hands of McCammon & Sprague, real estate agents, to be held until such examinations should be made, and thereafter delivered to the parties, should the land be found as represented; that plaintiff did examine the land and found that its quality and improvements were not at all as represented, and he demanded of McCammon & Sprague the return to him of the deed, which they refused, but on the contrary, wrongfully and without authority delivered it to defendant; that defendant had placed the deed on record and now claimed the land thereunder.

Defendant answered that the contract for the exchange of the land was agreed upon and concluded July 31, 1889, and as evidence of the agreement the following contract was written, signed and delivered by the parties:

"This article of agreement, entered into this thirty-first day of January, 1889, by and between Thomas S. Greening and H. W. Steele, both of Daviess county, State of Missouri, witnesseth, whereas H. W. Steele and T. S. Greening have this day made an exchange of certain tracts of lands as shown by two general warranty deeds, and whereas H. W. Steele agrees to pay T. S. Greening or his assigns the sum of $200 on or before the first day of March, 1889, as a difference in said exchange—the consideration of this agreement being such that each party to this transaction is to furnish a complete abstract of said properties free and clear of all incumbrance, except as stated in the abstract and deeds —and we each and severally agree to forfeit the sum of one hundred dollars to the other, should either fail to comply with the above agreement. Witness our hands this thirty-first day of January, 1889.

"T. S. GREENING.    [SEAL]
"H. W. STEELE.    [SEAL]"

That on the same day the two deeds making the exchange were also signed, sealed and delivered. That thereupon said contract and deeds were placed in the hands of McCammon & Sprague, to be held until defendant should pay the $200 provided by the contract to be paid by him, and that when said sum of money should be paid the deed to the land should be delivered to him. That said sum of money was paid and all conditions of the contract were complied with and said deed was properly returned to him.

The evidence showed that McCammon & Sprague, as real estate agents, had in their hands for sale or exchange, the lands of both parties. That negotiations for the exchange had been pending for some time, different propositions having been made and refused or withdrawn. On January 31, 1889, the parties got together and an agreement was reached, when the contract under which defendant claims was prepared and signed. On the same day deeds were also executed and acknowledged. Whether this contract and the deeds were then delivered is a disputed question. That they were then placed in the hands of McCammon & Sprague, and that the agreement for the exchange was concluded is without dispute. The question turned upon what the conditions were upon which the deeds were to be turned over to the respective grantees. Upon the deposit by defendant, for the use of plaintiff, of the $200 required to be paid, McCammon & Sprague delivered to defendant the deed conveying to him the eighty acres of land, and he had it recorded. That was done while plaintiff was in Kansas examining the land for which he had traded.

Plaintiff testified that on the night after the papers had been signed, and after he had gone home, be prepared an agreement which McCammon afterwards

signed.    That agreement was read in evidence over defendant's objection, and is as follows:

"T. S. Greening agrees to traid his 90 acres of land in Daviess Co. Mo. for Steels 240 acres of land in kansas and $200 hundred Dollars if Steels land soots him and is as represented to him which is to be good land of a deep black loomy soil wich is not any rock or gravel on it except about twenty acres of pasture which has some rock good new house of four fine finish roomes good stone sellar under kitchen good well and spring in door yard good orchard of five acres which bore a number of bushels of froot last yeare new bearn stableroom for six horses and corn cribb shingle roof and stone corall calf pasture fence with wire farme fenced with post and three wire steel is to pay T. S. Greenings ways to Butlar contey & back if they traid if they do not traid T. S. Greening is to pay his own way the deeds is to be placit in

Bank of winston and then if T. S. Greening

fide with Steels land in Kansas

s Deed overe to Steele on his land in

t steele tin.

"N. B. McCAMMON."

Plaintiff testifies that this agreement was afterwards torn into pieces by McCammon, and the pieces his attorneys pasted together as best they could. This accounts for the omission of some words. Much of the evidence in the case was given in the effort to prove this writing a forgery, and in attacks upon the credibility and character of the parties and witnesses. The court found for the plaintiff and granted the relief prayed. Defendant brings the case to this court by writ of error.

The evidence of plaintiff himself shows that the contract for the exchange of land was settled, written and signed by the parties on the thirty-first day of

January. That night, after returning home, plaintiff wrote the disputed agreement, making material additions to the original contract. This, he claims, was signed by McCammon, one of the agents through whom the exchange was effected. There is no pretense that defendant authorized or assented to the terms of this supplemental agreement. McCammon & Sprague were agents for both parties in negotiating the exchange, and the original contract and deeds were left with them in escrow until certain understood conditions should be performed. As to what those conditions were, the parties differ, and this difference makes the issues in the case. On the part of plaintiff it is insisted that the conditions were substantially those contained in the agreement written by himself, and on the part of defendant it is claimed that the sole condition was that the difference of $200 should be paid. As proof of these issues plaintiff offered, and the court admitted in evidence, over the objection of defendant, this supplemental writing.

We are at a loss to discover upon what principle this paper was admitted. While these agents of both parties were instrumental in bringing them together, the agreement was concluded and signed by the parties themselves. When that was done the authority of the agency ceased and they could bind neither party by a change in the terms or conditions of the contract without express authority from the party to be affected thereby. An agent would certainly have no implied authority to change, modify or rescind a contract made by his principal, much less to do so after a special agency had ended.

The writing was not admissible as a declaration of the agent. The representations, declarations, or admissions of an agent will only bind his principal when his acts would bind him. If the agent had no

authority to make the contract he could not by admissions bind the principal as to its terms. Story on Agency, sec. 134. The admissions of an agent are only binding on the principal when made "in reference to the act which he is authorized to perform and while engaged in its performance," or when it is a part of the *res gestæ*. Mechem on Agency, sec. 714.

But the writing does not purport to specify simply what was omitted from the original contract, but is an agreement complete in itself for the exchange, upon entirely different terms and conditions. It in fact purports to be a sale of the land and was not admissible as an act of the principal for the additional reason that the authority to make it was not shown to have been in writing. R. S. 1889, sec. 5186.

If there was, when the original contract was concluded, a parol contemporaneous agreement, independent of, and not inconsistent with, the one put in writing, or, if a part only of the contract was put in writing, then such independent agreement or the part so omitted could have been proved. *Brown v. Bowen*, 90 Mo. 190; *Black River Lumber Co. v. Warner*, 93 Mo. 384. .

If the contract and deeds were not, in fact, complete for want of delivery, but were placed in escrow to be held until certain conditions were complied with, or until plaintiff could, by examination, verify the truth of the representations as to the character and quality of the Kansas land and the improvements thereon, then the deed should not have been delivered by the depositary until all the conditions upon which it was deposited had been fulfilled. Such an agreement might consistently have been made independently of the contract, if there had been no delivery of it, as in such case the contract itself would have been conditional until a valid delivery was made. But these agreements and conditions can not be proved by an

unauthorized writing made by an agent after the work of the agency was concluded, nor by his subsequent admissions. This writing was not admissible as evidence of the agreement.

We are not informed by any special finding what weight was given to this evidence by the court. It may have influenced the finding. The discredit that was thrown around the parties to the suit and some of the witnesses, makes it a case upon which the chancellor, who has the witnesses and the parties before him, should pass. We, therefore, think it best to remand the cause for a new trial, relieved of its collateral issue as to whether the objectionable writing was a forgery, which occupied so prominent a place in the former trial. Reversed and remanded. All concur.