## HAWKINS, *Appellant*, v. McGROARTY *et al.*

### Division One, June 6, 1892.

1. .Statute of Frauds: AGENT TO SELL LAND: RATIFICATION. Revised Statutes, 1879, section 2513, as amended by act of March 19, 1887 (Laws, p. 195), provide that "no contract for the sale of lands made by an agent shall be binding upon the principal unless such agent is authorized in writing to make said contract;" *held* that a ratification of the agent's authority to bind the principal must also, in the absence of some element of equitable estoppel, be in writing.

2. ———: ———: ———: EQUITABLE ESTOPPEL. The evidence in this case examined and *held* not to show a case of equitable estoppel.

*Appeal from St. Louis City Circuit Court.* — HON. DANIEL DILLON, Judge.

AFFIRMED.

*Gibson, Bond & Gibson* for appellant.

The written authority not having authorized the contract, it was not competent for the owner to ratify it verbally so as to make it binding on him. The general rule is that what would not give authority in the first instance cannot amount to a ratification. The ratification to be binding must have been in writing. Story on Agency, sec. 242; 12 N. H. 232.

*W. P. Macklin* for respondent, E. J. McGroarty.

(1) The object of the statute of frauds is to prevent mischief arising from resort to parol evidence. Therefore, it is required that the contract giving power to sell shall state parties, subject-matter of contract, the consideration and promise, leaving nothing open to future treaty. Fry on Specific Performance, sec. 486, p. 245. (2) What is not authority in first instance cannot amount to a ratification. As authority in the first instance can be in writing only, it follows that a ratification must be in writing also; otherwise we make that a ratification which could constitute no authority in the first instance. Story on Agency [9 Ed.] sec. 242; *Dispatch Line v. Mfg. Co.*, 12 N. H. 231. (3) Where agent makes contracts in excess of the power given him in his written authority it will not bind principal. *Glass v. Rowe*, 103 Mo. 513. (4) Specific performances should not be decreed upon an oral understanding or contract, because they are too uncertain, and equity looks upon them with suspicion. 2 Story's Equity Jurisprudence, secs. 753–767; *Paris v. Haley*, 61 Mo. 453. (5) When the defense is made under the provisions of the statute of frauds, the defendant is the public addressing the court, and the court acts not from moral considerations, but from public policy. Fry on Specific Performance [3 Ed.] sec. 459, p. 225.

*W. S. Bodley* for respondent Maull.

(1) Under the law and under the terms of Hiemans' appointment as agent, Hiemans could not bind Maull for any sale except for the sum of $1,400 (Acts of 1887, p. 195; R. S. 1889, sec. 5186, p. 1257), where the authority of agent to sell in order to charge principal must be in writing. As to construction of statutes of 1887 of frauds, see Revised Statutes, 1889, sec. 5786. *Glass v. Rowe*, 103 Mo. 536. (2) Conceding for argument's sake that under the clause, "or such other price as I may hereafter agree upon," Hiemans could legally bind Maull for a less sum than $1,400, should he thereafter agree upon the offer made, we say this ratification, under the law above quoted, must be in writing, and if not in writing must be clearly established without conflict of testimony, or, as our supreme court puts it in *Louthar v. Stillwell*, 73 Mo. 492, the evidence must be so clear that a court of equity can clearly see there was no conflict in the understanding of the parties; and such evidence must be clearly unequivocal, not merely preponderating, as is ordinarily required in a court of law. *Veth v. Gierth*, 92 Mo. 97; *Strange v. Crowley*, 91 Mo. 287; *Lapham v. Driesvogt*, 36 Mo. App. 275; *Railroad v. McCarthy*, 97 Mo. 214. (3) It is incumbent on plaintiff to show that he did bring himself within the terms of his agreement with Hiemans, viz., in taking steps to complete the same within ten days from the date thereof by having title examined and making tender of purchase money within the time specified in the receipt. (4) The supreme court will exercise a control over the finding of the lower court in equity cases, and on the facts at the trial there should have been a judgment for defendants on these facts. *Benne v. Schnecko*, 100 Mo. 250; *McElroy v. Maxwell*, 101 Mo. 294.

(5)  The plaintiff has furnished no printed abstract of the record as required by rule 12 of this honorable court.

BRACE, J.—By an act approved March 19, 1887, the statute of "frauds and perjuries," section 2513, Revised Statutes, 1879, was amended by adding the following clause to that section:  "And no contract for the sale of lands made by an agent shall be binding upon the principal unless such agent is authorized in writing to make said contract."

This is an action in the nature of a bill in equity to specifically enforce the written contract of an agent in the name of his principal for a sale of land made by the agent, not within the terms of such agent's written authority, upon the ground of a verbal ratification of such sale by the principal after he was informed thereof.  In the facts of the case there is no element of equitable estoppel.  Plaintiff's evidence tended at most only to prove that the defendant, when informed by letter of the sale, did not manifest to the agent any disapprobation thereof, but directly thereafter sold to another person.

The trial court ruled that the written authority must authorize the agent to make the contract which he does make, in order to bind the principal, and unless it does so the ratification thereof must be in writing to bind him, citing Story on Agency [9 Ed.] sec. 242, and *Dispatch Line v. Mfy. Co.*, 12 N. H. 205, in which it was held that "a ratification of an act done by one assuming to be an agent relates back, and is equivalent to a prior authority.  When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification except in the same manner."

At common law, where a contract is required to be under seal, a ratification must also be under seal. 1 American & English Encyclopedia of Law, 436; Story on Agency, sec. 49, and authorities in note 3; Mechem on Agency, sec. 137, and authorities note 6, same page. And upon the same principle the last author, stating the general rule, says, "If, therefore, sealed authority was indispensable, sealed ratification must be shown; and if written authority was required written ratification must appear."    Sec. 136.

In *Pollard & Co. v. Gibbs*, 55 Ga. 45, it was held that "where a crop lien for fertilizers is executed by an agent who acts without authority from the principal, and in his absence, and the lien is under seal, proof of the ratification by the principal must be in writing and under seal."

In *Ragan v. Chenault*, 78 Ky. 546, under a statute which provided that "no person shall be bound as the surety of another by the act of an agent unless the authority of the agent is in writing, signed by the principal;" it was held that subsequent verbal ratification would not bind the surety; that to so hold would be to defeat the object of the statute.

In *Palmer v. Williams*, 24 Mich. 328, under a statute of frauds, the same as our own, before the adoption of the amendment set out, it was held that "ratification, if not made in writing, with due knowledge of the circumstances, could only be made out by such conduct on the part of the principal as would equitably estop him from insisting on his rights. And such an estoppel would not be made out unless defendants had been so far misled by him to their own prejudice, that justice demanded their protection against him. * * * In the absence of any conduct designed or calculated to mislead, mere delay will not deprive an

owner of his estate, legal or equitable, until barred by some clear rule of equity."

There is no such bar in the facts of this case. Hiemans was authorized in writing by the defendant Maull to sell his property for $1,400. On the ninth of July he sold to plaintiff for $1,300, who paid Hiemans $40 earnest money, and received from him a receipt for that amount on account of the sale. Hiemans says he immediately wrote Maull a letter, and that Maull called the next day, when he explained the sale to him, and he manifested no disapprobation. Maull sold to his codefendant McGroarty on the evening of the eleventh. He testifies that he did not see Hiemans until after this sale, and did not receive his letter until the evening of the day he sold to McGroarty, and did not understand from its contents that his agent had actually effected a sale. However the truth of this matter may be, he never received from his agent the earnest money of the plaintiff; in a day or two, took the check he received from McGroarty for $50, paid by him as earnest money to Hiemans (who collected it), and directed conveyances to be prepared to McGroarty, which was accordingly done, the balance of the purchase money paid, and the deeds delivered on the twenty-second of July. In the meantime he never, by any act or word of his, gave the plaintiff to understand for a moment that he had authorized or ratified the sale made by Hiemans to him; but from the first approach to him, made by the plaintiff, to secure a performance of the contract, steadily refused to recognize, ratify or confirm the same.

Under the statute, as it now reads, requiring written authority *for the contract which the agents make*, there can be no question, it would seem, that there is no such ratification here as could, by any process of reasoning, bind the defendant Maull to specifically

perform the contract in question, which his agent Hiemans had no written authority to make.

The judgment is affirmed. All concur.